**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**CASE NO. _____**

MDH GLOBAL, LLC,

     Plaintiff,                                    **CLASS ACTION**

v.                                           **JURY DEMAND**

CERTAIN UNDERWRITERS AT LLOYD'S
LONDON, UNDERWRITERS AT
LLOYD'S LONDON KNOWN AS
SYNDICATE XLC 2003, CNP 4444,
NVA 2007, ARG 2121, and ASC 1414, and
HDI GLOBAL SPECIALTY SE,

     Defendants.

_____/

## CLASS ACTION COMPLAINT

Plaintiff MDH GLOBAL, LLC ("MDH Global" or "Plaintiff"), on behalf of itself and all others similarly situated, states as follows for its Complaint against Defendants Certain Underwriters at Lloyd's London ("Underwriters"); Underwriters at Lloyd's London known as Syndicate XLC 2003, CNP 4444, NVA 2007, ARG 2121, and ASC 1414 ("Syndicate"), and HDI Global Specialty SE ("HDI Global") (together, "Defendants"):

## INTRODUCTION

1.     This is a class action brought by Plaintiff MDH Global against Defendants related to insurance policies that insure Plaintiff's properties, business operations, and potential liability in connection with Plaintiff's business operations. These insurance policies include Business Income coverage, Extra Expense coverage, and coverage for loss due to the actions of a Civil Authority, and contains no relevant virus exclusion.

2.      Plaintiff is a small business that purchased Defendants' insurance policy and made premium payments for a policy that, in the event of a catastrophe requiring a shutdown of business operations, would require Defendants to honor their contractual obligation to provide coverage. In March 2020, such a catastrophe took place when Plaintiff was forced to close its digital marketing businesses due to the COVID-19 pandemic. All across the country, including in North Carolina and New Jersey, government authorities issued closure orders to businesses, including the businesses operated by MDH Global, in an effort to stop the rapid spread of the deadly COVID-19 virus. Orders from Civil Authorities requiring businesses to close have resulted in massive losses to businesses throughout the country. As a result, many insureds, including Plaintiff, filed claims for Business Income coverage, Extra Expense coverage, and coverage for losses due to the actions of a Civil Authority.

3.      In response to the business interruption claims filed by Plaintiff and thousands of other class members resulting from the COVID-19 pandemic, Defendants have systematically denied and continue to deny and refuse to provide payment for insurance claims for coverage for similar losses and expenses by insureds holding policies that are, in all material respects, identical. Defendants' decision to not provide coverage and/or their decision to refuse to pay claims under the common policy forms issued to Plaintiff and the putative class members constitutes a breach of contract and provides them with the right to seek a declaratory judgment pursuant to 28 U.S.C. § 2201(a) on behalf of itself and the class members establishing that they are entitled to receive the benefit of the insurance coverage it purchased and for indemnification of the businesses losses it has sustained.

## PARTIES, JURISDICTION AND VENUE

4.     Plaintiff MDH Global is a limited liability company organized under Nevada law with its principal place of business located at 1513 Gilder Court, Kill Devil Hills, North Carolina 27948. MDH Global operates a vacation rental company. One or more of the members of MDH Global are citizens of North Carolina.

5.     Defendant Underwriters at Lloyd's London is composed of syndicates of individual underwriters that share respective and several liability under an insurance policy. Underwriters at Lloyd's London is, in turn, comprised of entities known as "Names," which underwrite insurance in a market known as Lloyd's of London. Each "Name" and syndicate is organized under the laws of the United Kingdom and is located in and has its principal place of business in England. Upon information and belief, the liabilities under Plaintiff's insurance policy are shared among a syndicate of underwriters identified by a pseudonym and respective allocation of liability: XLC 2003 (37.89%); CNP 4444 (15.10%); NVA 2007 (12.81%); ARG 2121 (10.61%); and ASC 1414 (8.49%). The remaining 15.10 of liability is shared by HDI Global Specialty SE.

6.     Defendant HDI Global Specialty SE is a European society company organized under the laws of Germany, with its principal place of business in Germany. HDI Global is a wholly owned subsidiary of Talanx AG, a publicly traded company organized under the laws of Germany, with its principal place of business in Germany. At all times material, HDI Global, Talanx AG, and other Talanx subsidiaries engaged in continuous and not isolated activity in the United States and specifically in New Jersey, including but not limited to contracting to insure property located in Florida.

7.     Defendants are an insurance company engaged in the business of selling insurance contracts to commercial entities such as Plaintiff in North Carolina and in all fifty states, including in states like New Jersey, and including by and through its wholly-owned subsidiaries.

8.     At all times material, Defendants engaged in substantial and not isolated activity on a continuous and systematic basis in the state of New Jersey by issuing and selling insurance policies in New Jersey and by contracting to insure property located in New Jersey.

9.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because it involves citizens of different states and the amount in controversy exceeds $75,000.

10.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because there is diversity between Defendants and at least one member of each class; there are more than one hundred members of each class; and the amount in controversy exceeds $5,000,000 exclusive of interest and costs. This Court also has subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202 and is authorized to grant declaratory relief under these statutes.

11.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to the claim occurred in this district and/or a substantial party of the property that is the subject of the action is situated in this district.

12.     This Court has personal jurisdiction over Defendants because Plaintiff's claims arise out of, among other things, Defendants conducting, engaging in, and/or carrying on business in New Jersey; Defendants breaching a contract in this state by failing to perform acts required by contract to be performed in this state; and Defendants contracting to insure property in New Jersey. Defendants also purposefully availed themselves of the opportunity of conducting activities in the state of New Jersey by marketing their insurance policies and services within the state, and

intentionally developing relationships with brokers, agents, and customers within the state to insure property within the state, all of which resulted in the policy at issue in this action.

## FACTUAL BACKGROUND

### A. *Insurance Coverage*

13.     On or about February 4, 2020, MDH Global renewed the Policy, a property insurance policy issued and underwritten by Defendants. The insured premises under the policy is 209 East Hayman Boulevard, Kill Devil Hills, NC 27948. A copy of the MDH Global Policy is attached as Exhibit A.

14.     The Policy uses standard common forms that contain the same and/or substantially similar provisions at issue in this action as those issued by Defendants to the members of the putative class as defined herein.

15.     The Policy is an all-risk insurance policy. In an all-risk insurance policy, all risks of loss are covered unless they are specifically excluded.

16.     In accordance with the all-risk nature of the Policy, Defendants agreed to pay for all losses caused by a "Covered Cause of Loss," defined as "Risks of Direct Physical Loss, unless the loss is excluded under the Policy."

17.     One type of coverage provided by the Policy is for loss of business income, often called business interruption insurance. This coverage is specifically provided for in a section of the Policy titled "Vacation Rental Business Income Coverage."

18.     Pursuant to this Form, Defendants promised to pay for "Loss of Business Income" caused by a Covered Cause of Loss. Specifically, Defendants promised to pay for the loss of Business Income sustained due to the necessary "suspension" of the insured's "operations" during the "period of restoration."

19.     The Policy defines "Business Income" as "the gross revenue from overnight and event rental of the property listed in the declaration that would have been earned or incurred if no physical loss had occurred less any expenses that did not continue due to the suspension of your operation."

20.      "Period of Restoration" means the period of time that:

    a.  Begins with the date of direct physical loss caused by or resulting from any Covered Cause of Loss at the described premises; and

    b.  Ends on the date by which the property at the described premises should have been repaired, rebuilt or replaced with all due reasonable speed of and similar quality.

21.     Additionally, under the Policy, Defendants also promised to cover "Extended Business Income." This coverage requires Defendants to pay for loss of business income beyond the Period of Restoration under certain conditions.

22.     The Policy also provides a coverage for extra expenses in a section titled "Extra Expense." Pursuant to this section of the Policy, Defendants promised to pay for "necessary expenses that you would have not incurred if there had been no direct physical loss to property at the described premises, including personal property in the open (or in a vehicle) within 100 feet, caused by or resulting from a Covered Cause of Loss."

23.     The Policy also provides "Civil Authority" coverage for "the actual loss of 'Business Income' you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss. This coverage will apply for a period of up to 90 consecutive days from the date of that action."

24.     The Civil Authority coverage is an independent basis for business interruption coverage that can be triggered even when the standard business interruption coverage is not.

25.     Plaintiff's Policy does not contain any exclusion that would apply to allow Defendants to deny coverage for losses caused by the interruption of Plaintiff's business and the actions of civil authorities.

26.     The Policy does not contain any exclusion which would apply to allow Defendants to completely deny coverage for losses caused by COVID-19 and related actions of civil authorities taken in response to COVID-19.

27.     Because the Policy is an all-risk policy and does not exclude Plaintiff's losses, Plaintiff's losses are covered up to the applicable limits of insurance.

**B.   *The COVID-19 Pandemic***

28.     COVID-19 is a novel coronavirus that originated in Wuhan, China at the end of 2019 and rapidly spread around the world, infecting millions of people, including over 2.15 million Americans. Over 118,000 Americans have died due to COVID-19.

29.     COVID-19 is a physical substance that can cause lethal illness. COVID-19 can be present outside the body in viral fluid particles. COVID-19 is highly contagious and easily communicable through droplets in the air and on surfaces.

30.     The scientific community, and those personally affected by the virus, recognize COVID-19 as a cause of real physical loss and damage. Contamination of the Insured Property would be a direct physical loss requiring remediation to clean the surfaces within the Insured Property.

31.     COVID-19 remains capable of being transmitted on a variety of inert physical surfaces for various periods of time. For example, reports issued by the National Institute of Health ("NIH") indicates that COVID-19 remains stable and transmittable in airborne aerosols for up to

three hours, on copper for up to four hours, on cardboard for up to 24 hours, and on plastic and stainless steel for up to two to three days. Moreover, the COVID-19 pandemic has been exacerbated by the fact that the virus physically infects and stays on surfaces of some objects or materials for up to 28 days.

32.     The Center for Disease Control ("CDC") has issued guidance recommending people not to gather in groups larger than 10. Pursuant to CDC guidelines, people face increased danger of contracting COVID-19 in places where people congregate and are in close proximity to one another, and especially in indoor environments.

33.     COVID-19 has been transmitted in a variety of ways, including transmission (a) by way of human contract with surfaces and items of physical property; (b) by human to human contact and interaction, including places like bars and restaurants, retail stores, and hair and beauty salons, and the like; and (c) through airborne particles emitted into the air and even recirculated through air conditioning units.

34.     The presence of COVID-19 particles renders physical property unsafe and impairs its value, usefulness, and/or normal function, causing direct physical harm to property and resulting in direct physical loss and physical damage to property.

35.     The presence of COVID-19 particles and/or the presence of persons infected with COVID-19 or carrying COVID-19 particles at premises renders the premises unsafe, thereby impairing the premises' value, usefulness, and/or normal function, and resulting in direct physical loss to and of the premises and property.

C. *The Covered Cause of Loss*

36.     The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiff's business (the "Closure Orders").

37.     As of the date this Complaint is filed, North Carolina had over 65,000 total positive cases of COVID-19, and over 1,360 deaths.

38.     In response to the public health emergency caused by the COVID-19 pandemic, civil authorities across the United States, including the civil authorities with jurisdiction over Plaintiff in North Carolina, have issued Closure Orders restricting and prohibiting access to Plaintiff's insured property and the insured properties of other putative class members.

39.     In North Carolina, Governor Cooper issued a "Stay At Home" order on March 29, 2020, which required all non-essential businesses to close, including Plaintiff's.

40.     State courts within the Third Circuit have already agreed with Plaintiff's position that physical loss and damage exists resulting in coverage here. *See Friends of DeVito, et. al v. Wolf*, No. 68 MM 2020 (Pa. April 13, 2020). Furthermore, orders issued in states such as New York, Colorado, Washington, Indiana, New Mexico, North Carolina, Missouri, and Illinois have all recognized that COVID-19 poses a specific threat to property and can cause property loss and damage.

41.     The Closure Orders issued by North Carolina authorities covering North Carolina non-essential businesses (such as Plaintiff's) are similar to Closure Orders that have been issued nationwide by state and local civil authorities.

42.     The presence of COVID-19 caused direct physical loss of and/or damage to the Insured Property under the Policy by, among other things, damaging the property, denying access

to the property, preventing customers and patients from physically occupying the property, causing the property to be physically uninhabitable by customers and patients, causing its function to be nearly eliminated or destroyed, and/or causing a suspension of business operations on the premises.

43. The Closure Orders of civil authorities prohibited access to Plaintiff and other class members' Insured Properties, and the areas immediately surrounding the Insured Properties, in response to dangerous physical conditions resulting from a covered cause of loss.

44. As a result of the presence of COVID-19 and the Closure Orders, Plaintiff and other class members sustained a suspension of business operations, sustained losses of business income, and incurred extra expenses.

45. Plaintiff's losses and expenses have continued through the date of filing this action.

46. Plaintiff's losses and expenses are not excluded from coverage under the Policy. Because the Policy is an all-risk policy and Plaintiff has complied with its contractual obligations, Plaintiff is entitled to payment for these losses and expenses.

47. Consistent with the terms and procedures of the Policy, Plaintiff submitted a claim for loss to Defendants under the Policy due to the presence of COVID-19 and the shutdown Civil Authority orders.

48. In violation of the Policy's plain language and their own contractual obligations, Defendants denied Plaintiff's claim and refuse to pay for Plaintiff's losses and expenses.

## CLASS ACTION ALLEGATIONS

49. Plaintiff brings this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

50.     Plaintiff seeks to represent nationwide classes defined as:

    a.   All persons and entities with Vacation Rental Business Income coverage under a property insurance policy issued by Defendants that suffered a suspension of business due to COVID-19 at the premises covered by the business income coverage (the "Business Income Declaratory Judgment Class").

    b.   All persons and entities with Vacation Rental Civil Authority coverage under a property insurance policy issued by Defendants that suffered loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Declaratory Judgment Class").

    c.   All persons and entities with Vacation Rental Extra Expense coverage under a property insurance policy issued by Defendants that sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their property insurance policy (the "Extra Expense Declaratory Judgment Class").

51.     Excluded from each defined Class are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members. Plaintiff reserves the right to modify or amend each of the Class definitions, as appropriate, during the course of this litigation.

52.     This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

53.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The members of each defined Class are so numerous that individual joinder of all Class Members is impracticable. While Plaintiff is informed and believes that there are thousands of members of each Class, the precise

number of Class Members is unknown to Plaintiff but may be ascertained from Defendants' books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

54.     **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class Members, including, without limitation:

   a.   Defendants issued all-risk policies to the members of the Class in exchange for payment of premiums by the Class Members;

   b.   whether the Class suffered a covered loss based on the common policies issued to members of the Class;

   c.   whether Defendants wrongfully denied all claims based on COVID-19;

   d.   whether Defendants' Business Income coverage applies to a suspension of business caused by COVID-19;

   e.   whether Defendants' Civil Authority coverage applies to a loss of Business Income caused by the orders of state governors requiring the suspension of business as a result of COVID-19;

   f.   whether Defendants' Extra Expense coverage applies to efforts to minimize a loss caused by COVID-19;

   g.   whether Defendants have breached their contracts of insurance through a blanket denial of all claims based on business interruption, income loss or closures related to COVID-19 and the related closures; and

h.  whether Plaintiff and the class are entitled to an award of reasonable attorney fees, interest and costs.

55.  **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class Members' claims because Plaintiff and the other Class Members are all similarly affected by Defendants' refusal to pay under their Business Income, Civil Authority, and Extra Expense coverages. Plaintiff's claims are based upon the same legal theories as those of the other Class Members. Plaintiff and the other Class Members sustained damages as a direct and proximate result of the same wrongful practices in which Defendants engaged.

56.  **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because its interests do not conflict with the interests of the other Class Members who it seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds by failing to pay the amounts owed under their policies, and Plaintiff intends to prosecute this action vigorously. The interests of the above-defined Classes will be fairly and adequately protected by Plaintiff and their counsel.

57.  **Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).** Plaintiff seeks class-wide adjudication as to the interpretation, and resultant scope, of Defendants' Business Income, Civil Authority, and Extra Expense coverages. The prosecution of separate actions by individual members of the Classes would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendants. Moreover, the adjudications sought by Plaintiff could, as a practical matter, substantially impair or impede the ability of other Class Members, who are not parties to this action, to protect their interests.

58.     **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).**
Defendants acted or refused to act on grounds generally applicable to Plaintiff and the other Class
Members, thereby making appropriate final injunctive relief and declaratory relief, as described
below, with respect to the Class Members.

59.     **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is
superior to any other available means for the fair and efficient adjudication of this controversy,
and no unusual difficulties are likely to be encountered in the management of this class action.
Individualized litigation creates a potential for inconsistent or contradictory judgments and
increases the delay and expense to all parties and the court system. By contrast, the class action
device presents far fewer management difficulties, and provides the benefits of single adjudication,
economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### DECLARATORY JUDGMENT – BUSINESS INCOME COVERAGE
**(Claim Brought on Behalf of the Business Income Declaratory Judgment Class)**

60.     Plaintiff repeats and realleges Paragraphs 1-59 as if fully set forth herein.

61.     Plaintiff brings this Count individually and on behalf of the other members of the
Business Income Declaratory Judgment Class.

62.     Plaintiff's policy with Defendants, as well as those of the other Business Income
Declaratory Judgment Class Members, are contracts under which Defendants were paid premiums
in exchange for its promise to pay Plaintiff and the other Business Income Declaratory Judgment
Class Members' losses for claims covered by the policy.

63.     Plaintiff and the other Business Income Declaratory Judgment Class Members have
complied with all applicable provisions of the policies and/or those provisions have been waived

by Defendants, or Defendants are estopped from asserting them, and yet Defendants have abrogated their insurance coverage obligations pursuant to the policies' clear and unambiguous terms and have wrongfully and illegally refused to provide coverage to which Plaintiff and the other Business Income Declaratory Judgment Class Members are entitled.

64.     Defendants have denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

65.     An actual case or controversy exists regarding Plaintiff and the other Business Income Declaratory Judgment Class Members' rights and Defendants' obligations under the policies to reimburse Plaintiff for the full amount of Business Income losses incurred by Plaintiff and the other Business Income Declaratory Judgment Class Members in connection with suspension of their businesses stemming from the COVID-19 pandemic.

66.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Business Income Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

a.  Plaintiff and the other Business Income Declaratory Judgment Class Members' Business Income losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

b.  Defendants are obligated to pay Plaintiff and the other Business Income Declaratory Judgment Class Members for the full amount of the Business Income losses incurred and to be incurred in connection with the Closure Orders during the relevant time period and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT II**
**DECLARATORY JUDGMENT – CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Civil Authority Declaratory Judgment Class)**

67.     Plaintiff repeats and realleges Paragraphs 1-59 as if fully set forth herein.

68.     Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Declaratory Judgment Class.

69.     Plaintiff's insurance policy with Defendants, as well as those of the other Civil Authority Declaratory Judgment Class Members, are contracts under which Defendants were paid premiums in exchange for their promise to pay Plaintiff and the other Civil Authority Declaratory Judgment Class Members' losses for claims covered by the policy.

70.     Plaintiff and the other Civil Authority Declaratory Judgment Class Members have complied with all applicable provisions of the policies and/or those provisions have been waived by Defendants, or Defendants are estopped from asserting them, and yet Defendants have abrogated their insurance coverage obligations pursuant to the policies' clear and unambiguous terms and have wrongfully and illegally refused to provide coverage to which Plaintiff and the other Class Members are entitled.

71.     Defendants have denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

72.     An actual case or controversy exists regarding Plaintiff and the other Civil Authority Declaratory Judgment Class Members' rights and Defendants' obligations under the policies to reimburse Plaintiff and the other Civil Authority Declaratory Judgment Class Members for the full amount of covered Civil Authority losses incurred by Plaintiff and the other Civil

Authority Declaratory Judgment Class Members in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

73.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Civil Authority Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

a.  Plaintiff and the other Civil Authority Declaratory Judgment Class Members' Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

b.  Defendants are obligated to pay Plaintiff and the other Civil Authority Declaratory Judgment Class Members the full amount of the Civil Authority losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT III**
**DECLARATORY JUDGMENT – EXTRA EXPENSE COVERAGE**
**(Claim Brought on Behalf of the Extra Expense Declaratory Judgment Class)**

74.     Plaintiff repeats and realleges Paragraphs 1-59 as if fully set forth herein.

75.     Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Declaratory Judgment Class.

76.     Plaintiff's insurance policy with Defendants, as well as those of the other Extra Expense Declaratory Judgment Class Members, are contracts under which Defendants were paid premiums in exchange for their promise to pay Plaintiff and the other Extra Expense Declaratory Judgment Class Members' losses for claims covered by the policy.

77.     Plaintiff and the other Extra Expense Declaratory Judgment Class Members have complied with all applicable provisions of the policies and/or those provisions have been waived by Defendants, or Defendants are estopped from asserting them, and yet Defendants have abrogated their insurance coverage obligations pursuant to the policies' clear and unambiguous terms and have wrongfully and illegally refused to provide coverage to which Plaintiff and the other Class Members are entitled.

78.     Defendants have denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

79.     An actual case or controversy exists regarding Plaintiff and the other Extra Expense Declaratory Judgment Class Members' rights and Defendants' obligations under the policies to reimburse Plaintiff and the other Extra Expense Declaratory Judgment Class Members for the full amount of Extra Expense losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

80.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Extra Expense Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

a.   Plaintiff and the other Extra Expense Declaratory Judgment Class Members' Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

b.   Defendants are obligated to pay Plaintiff and the other Extra Expense Declaratory Judgment Class Members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the Closure

Orders during the relevant time period and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class Members, respectfully requests that the Court enter judgment in their favor and against Defendants as follows:

a.  Entering an order certifying the proposed nationwide Classes, as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Classes;

b.  Entering declaratory judgments on Counts I–III in favor of Plaintiff and the members of the Income Protection Declaratory Judgment Class, the Civil Authority Declaratory Judgment Class, and the Extra Expense Declaratory Judgment Class, as follows

    i.  Business Income, Civil Authority, and Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

    ii.  Defendants are obligated to pay for the full amount of the Business Income, Civil Authority, and Extra Expense losses incurred and to be incurred related to COVID-19, the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

c.  Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded;

d.  Ordering Defendants to pay attorneys' fees and costs of suit; and

e.  Ordering such other and further relief as may be just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: July 2, 2020                                  Respectfully submitted,

By: */s/ Lawrence E. Bathgate, II*
Lawrence E. Bathgate, II, Esq.
Fed ID No. LB-7387
lbathgate@bathweg.com
John J. Reilly, Esq.
Fed ID No. JR-0402
jreilly@bathweg.com
Ryan M. Farrell, Esq.
Fed ID No. 276372018
rfarrell@bathweg.com
**BATHGATE, WEGENER & WOLF, P.C.**
One Airport Road
P.O. Box 2043
Lakewood, New Jersey 08701
Phone: (732) 363-0666

Adam M. Moskowitz
(*Pro Hac Vice* Admission Pending)
Florida Bar No. 984280
adam@moskowitz-law.com
Adam A. Schwartzbaum
(*Pro Hac Vice* Admission Pending)
Florida Bar No. 93014
adams@moskowitz-law.com
Howard M. Bushman
(*Pro Hac Vice* Admission Pending)
Florida Bar No. 0364230
howard@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

William F. "Chip" Merlin, Jr.
cmerlin@MerlinLawGroup.com
New Jersey Bar No.  055182013
Florida Bar No.   364721
Michael Howard Moore

DC Bar No.  482356
mmoore@merlinlawgroup.com
(*Pro Hac Vice* Admission Pending)
**MERLIN LAW GROUP**
777 S. Harbour Island Blvd.,
Suite 950
Tampa, FL 33602
Telephone: (813) 229-1000
Facsimile: (813) 229-3692

Rene M. Sigman
Texas Bar No. 24037492
rsigman@MerlinLawGroup.com
(*Pro Hac Vice* Admission Pending)
**MERLIN LAW GROUP**
515 Post Oak Blvd
Suite 510
Houston, Texas 77027
Tel:     (713) 626-8880
Fax:     (713) 626-8881

Christina Phillips
Illinois Bar No.  6287091
cphillips@merlinlawgroup.com
(*Pro Hac Vice* Admission Pending)
**MERLIN LAW GROUP**
181 West Madison
Suite 3475
Chicago, Illinois 60602
Tel:     (312) 260-0806
Fax:     (312) 260-0808