UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION


IN RE: CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,
COVID-19 BUSINESS INTERRUPTION PROTECTION
INSURANCE LITIGATION                                                         MDL No. 2961


ORDER DENYING TRANSFER


**Before the Panel:**[*] At its July 2020 hearing session, the Panel considered two motions seeking centralization of an industry-wide litigation involving claims for insurance coverage of business interruption losses caused by the COVID-19 pandemic and the related government orders suspending, or severely curtailing, operations of non-essential businesses. We denied the motions, concluding that the differences among the many insurers would overwhelm any common factual questions and hinder the transferee court's ability to efficiently manage the litigation. *See In re COVID-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2942, 2020 WL 4670700, __ F. Supp. 3d __ (J.P.M.L. Aug. 12, 2020). In the briefing on those motions, several parties proposed that insurer-specific MDLs be created. We concluded that we needed "a better understanding of the factual commonalities and differences among these actions, as well as the efficiencies that may or may not be gained through centralization, before creating an insurer-specific MDL." *Id.* at *3. Therefore, we ordered the Panel Clerk to issue orders directing the parties to certain actions involving a common insurer or group of insurers to show cause why those actions should not be centralized.

One of those orders encompassed the thirteen actions listed on Schedule A,[1] which involve claims against Certain Underwriters at Lloyd's, London (Lloyd's). Since we issued this show cause order, the parties have notified us of eleven related actions. Plaintiffs in twelve of these 24 actions support the creation of a Lloyd's MDL. They variously suggest five potential transferee districts: the Southern District of Florida; the Eastern District of Louisiana; the Western District of Missouri; the Southern District of New York; and the Eastern District of Pennsylvania. Plaintiffs in two actions oppose centralization, as do the responding Lloyd's defendants[2] and defendant DTW1991

---

[*] Judge David C. Norton took no part in the decision of this matter.

[1] A fourteenth action on the show cause order, filed in the Central District of Illinois, was voluntarily dismissed.

[2] The responding Lloyd's defendants include Certain Underwriters at Lloyd's, London trading as Syndicates HIS 33, MSP 318, HDU 382, FDY 435, KLN 510, AUW 609, AFB 623, SAM 727, CSL 1084, TAL 1183, AMA 1200, AES 1225, ASC 1414, RNR 1458, AXS 1686, DUW 1729, ACS 1856, QBE 1886, SKD 1897, WRB 1967, APL 1969, AML 2001, XLC 2003, NVA 2007,
(continued...)

Case 3:20-cv-08214-BRM-ZNQ Document 15 Filed 10/21/20 Page 2 of 6 PageID: 581
Case MDL No. 2961 Document 107 Filed 10/02/20 Page 2 of 6

-2-

Underwriting Ltd. In the alternative, the Lloyd's defendants suggest that the Southern District of Florida serve as the transferee court for this litigation. Additionally, we received two briefs by amici curiae, one in support of and one in opposition to centralization.

After considering the arguments of counsel,[3] we conclude that centralization of the Lloyd's actions will not serve the convenience of the parties and witnesses or further the just and efficient conduct of this litigation. Most of the insurance policies at issue in the Lloyd's actions listed on Schedule A appear to use one of two standard forms drafted by the Insurance Services Office (ISO) and will involve the interpretation of the phrases "direct physical loss of," "direct physical loss to," and "damage to" property, as well as the application of four common exclusions. There are, however, significant differences among the actions that will hinder the ability of the transferee court to efficiently manage the MDL—differences that are likely to increase as more actions are transferred to the MDL. For instance, one action (*Fire Island Retreat*) involves a homeowners insurance policy, not a business property insurance policy. Furthermore, Lloyd's is not a single insurance company, but rather is an insurance market in which more than 90 "syndicates" agree to accept several liability for a percentage of the coverage provided by a particular insurance policy. *See generally Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857–59 (5th Cir. 2003) (discussing the structure of the Lloyd's market). Not only does the subscription nature of the Lloyd's market mean that the insurers will change from policy to policy, but some policies are issued on "split markets," in which non-Lloyds' insurers participate. This could dramatically expand the scope of this MDL. Indeed, several of the actions, both on the show cause order and noticed as related to this litigation, involve non-Lloyd's insurers.[4] A Lloyd's MDL that pulls in multiple insurers would introduce the same manageability concerns that weighed against the creation of an industry-wide litigation in MDL No. 2942.

Additionally, the parties do not dispute that Lloyd's is a surplus line carrier (one of the largest such carriers in the United States). Lloyd's therefore is not obligated to use ISO forms in its policies, unlike "admitted" insurers, which are required to use forms approved by each state's

---

[2](...continued)
MMX 2010, CHN 2015, ARG 2121, CGM 2488, NEO 2468, AFB 2623, MAP 2791, BRT 2987, BRT 2988, AGR 3268, HCC 4141, XIS H4202, PRL 4242, CNP 4444, TRV 5000, ENH 5151, VSM 5678, WBC 5886, and PPP9981, along with Axis Specialty Europe SE, HDI Global Specialty SE, Vanguard Claims Administration, Inc., and Blair & Company. Defendants note that Axis Specialty Europe SE and HDI Global Speciality SE are not Lloyd's underwriters. Vanguard Claims Administration and Blair & Company are not insurers, but claims management companies.

[3] In light of the concerns about the spread of COVID-19 virus (coronavirus), the Panel heard oral argument by videoconference at its hearing session of September 24, 2020. *See* Suppl. Notice of Hearing Session, MDL No. 2961 (J.P.M.L. Sept. 8, 2020), ECF No. 102.

[4] One of these, the Southern District of New York *Century 21 Department Stores, LLC* action, is particularly concerning in this regard, as it appears to involve a layered program of property insurance provided by nine different insurers.

-3-

department of insurance.  *See, e.g.*, *Triage, Inc. v. Prime Ins. Syndicate, Inc.*, 887 A.2d 303, 306 (Pa. 2005) (discussing the surplus line distinction under Pennsylvania law).  The inclusion of non-standard and non-common forms and policy language would hinder the ability of the transferee court to organize the litigation and quickly reach the common factual and legal questions.

This litigation demands efficiency.  As counsel repeatedly emphasized in their papers and during oral argument, time is of the essence in this litigation.  Many plaintiffs are on the brink of bankruptcy as a result of business lost due to the COVID-19 pandemic and the government closure orders.  Efficiency here is best obtained outside the MDL context.  If these actions were centralized, the transferee court would have to establish a pretrial structure to manage numerous plaintiffs, many of which are pursuing distinct theories of liability.  Given the likelihood that the scope of any MDL will expand to encompass other insurers who participated with the Lloyd's market on certain policies, organization of the defendants also might be necessary.  The court then would have to identify common policies with identical or sufficiently similar policy language and interpret those policies under applicable state law.

It thus will take some time to organize this litigation.  In the meantime, dispositive motions addressing the core policy interpretation questions are pending in ten of the thirteen show cause actions, at least five of which are fully briefed.  If plaintiffs' claims survive these motions,[5] discovery appears relatively straightforward and much of it will be plaintiff- and property-specific.  In these circumstances, the actions will reach resolution more quickly if they remain in the transferor courts.  We impress upon the courts overseeing these actions the importance of advancing these actions towards resolution as quickly as possible.

Accordingly, centralization of the actions listed on Schedule A is not warranted.  To the extent necessary, alternatives to centralization are available to minimize any duplication in pretrial proceedings, including informal cooperation and coordination among the parties and courts.  We also note that some similar actions are pending in the same district before multiple judges, and it may be appropriate for the courts or the parties to seek to relate those before one judge.

---

[5] We take no position on the merits of these dispositive motions.  *See In re Kauffman Mut. Fund Actions*, 337 F. Supp. 1337, 1339–40 (J.P.M.L. 1972) ("The framers of Section 1407 did not contemplate that the Panel would decide the merits of the actions before it and neither the statute nor the implementing Rules of the Panel are drafted to allow for such determinations.").

-4-

IT IS THEREFORE ORDERED that the order to show cause regarding the actions listed on Schedule A is vacated.

PANEL ON MULTIDISTRICT LITIGATION

_____
Karen K. Caldwell
Chair

| | |
|---|---|
| Ellen Segal Huvelle | R. David Proctor |
| Catherine D. Perry | Nathaniel M. Gorton |
| Matthew F. Kennelly | |

IN RE: CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,
COVID-19 BUSINESS INTERRUPTION PROTECTION
INSURANCE LITIGATION                                MDL No. 2961

## SCHEDULE A

<u>Middle District of Florida</u>

PRIME TIME SPORTS GRILL, INC. v. DTW 1991 UNDERWRITING LIMITED,
C.A. No. 8:20‒00771

<u>Southern District of Florida</u>

RUNWAY 84, INC. & RUNWAY 84 REALTY, LLC v. CERTAIN UNDERWRITERS
AT LLOYD'S, LONDON, SUBSCRIBING TO CERTIFICATE NUMBER
ARP–75203–20, C.A. No. 0:20–61161
GIO PIZZERIA & BAR HOSPITALITY, LLC, ET AL. v. CERTAIN
UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY
NUMBERS ARP‒74910‒20 AND ARP‒75209‒20, C.A. No. 0:20‒61741
EL NOVILLO RESTAURANT, ET AL. v. CERTAIN UNDERWRITERS AT
LLOYD'S LONDON, ET AL., C.A. No. 1:20‒21525
ATMA BEAUTY, INC. v. HDI GLOBAL SPECIALTY SE, ET AL.,
C.A. No. 1:20–21745
SUN CUISINE, LLC v. CERTAIN UNDERWRITERS AT LLOYD'S LONDON
SUBSCRIBING TO CONTRACT NUMBER B0429BA1900350 UNDER
COLLECTIVE CERTIFICATE ENDORSEMENT 350OR100802,
C.A. No. 1:20-21827
SA PALM BEACH LLC v. CERTAIN UNDERWRITERS AT LLOYDS LONDON,
ET AL., C.A. No. 9:20-80677

<u>Eastern District of Louisiana</u>

STATION 6, LLC v. CERTAIN UNDERWRITERS AT LLOYD'S LONDON,
C.A. No. 2:20–01371

<u>District of New Jersey</u>

PALM AND PINE VENTURES, LLC v. CERTAIN UNDERWRITERS AT LLOYD'S
LONDON, ET AL., C.A. No. 3:20–08212
MDH GLOBAL, LLC v. CERTAIN UNDERWRITERS AT LLOYD'S LONDON,
ET AL., C.A. No. 3:20–08214

-A2-

<u>Southern District of New York</u>

632 METACOM, INC. v. CERTAIN UNDERWRITERS AT LLOYD'S, LONDON
    SUBSCRIBING TO POLICY NO. XSZ146282, C.A. No. 1:20–03905

<u>Eastern District of Pennsylvania</u>

FIRE ISLAND RETREAT v. CERTAIN UNDERWRITERS AT LLOYDS, LONDON
    SUBSCRIBING TO POLICY NO. B050719MKSFL000081-00,
    C.A. No. 2:20–02312
INDEPENDENCE RESTAURANT GROUP, LLC v. CERTAIN UNDERWRITERS AT
    LLOYD'S, LONDON, C.A. No. 2:20–02365